783 So.2d 1087 (2001)
Eugene J. STRASSER, M.D., P.A., a Florida professional corporation; Eugene J. Strasser, individually; and Linda K. Strasser, his wife, individually, Appellants,
v.
Bose YALAMANCHI, M.D., P.A., a Florida professional corporation, Appellee.
No. 4D98-3573.
District Court of Appeal of Florida, Fourth District.
February 28, 2001.
Rehearing Denied May 15, 2001.
*1089 Paul R. Regensdorf of Akerman, Senterfitt & Edison, Fort Lauderdale, and Susan L. Dolin of Muchnick, Wasserman & Dolin, Hollywood, for appellants.
Thomas D. Lardin of Thomas D. Lardin, P.A., Fort Lauderdale, for appellee.
OFTEDAL, RICHARD, Associate Judge.
Eugene J. Strasser, M.D., P.A., Eugene Strasser, individually, and Linda Strasser, individually, (collectively "Appellants") timely appeal a final judgment entered in favor of Bose Yalamanchi, M.D., P.A., ("Yalamanchi") following a trial by jury. The final judgment awards Yalamanchi compensatory damages of $591,111.00 against each of the appellants both jointly and severally in addition to punitive damages of $500 each against Eugene J. Strasser, M.D., P.A., and Linda K. Strasser, individually. We affirm.
Yalamanchi and Eugene Strasser ("Strasser") are both plastic surgeons who through their professional associations entered into a contractually based working agreement in 1984. The contract provided that Yalamanchi was to receive fifty percent of the collections of his gross billings. The two doctors continued to work together until August 3, 1991, when Yalamanchi terminated the agreement to begin his own practice. A dispute over monies owed by Strasser to Yalamanchi under the agreement later ripened into a breach of contract action between the parties.
Yalamanchi soon sought discovery from Strasser of various financial records, including office billing and bank statements, patient invoices, day sheets, deposit books, canceled checks, and accounts receivable records. Following a two-year crusade through the courts of this state in a vain and costly attempt by Yalamanchi to obtain relevant and critical information vital to his claim, he amended his complaint against Appellants to include a claim of intentional spoliation of evidence.
This court was initially thrust into the fray when Yalamanchi sought access to Strasser's computer system after having failed in his attempts to obtain access to original data, most of which Strasser *1090 claimed was no longer available due to an inadvertent roof leak or a mysterious chemical spill. In Strasser v. Yalamanchi, 669 So.2d 1142 (Fla. 4th DCA 1996), we quashed the trial judge's order granting Yalamanchi unlimited access to the computer but left the door open for a future search upon a showing that previously purged information could be successfully retrieved without compromising patient confidentiality or damaging Strasser's computer and data bases.
Upon remand, the trial judge conducted hearings in September of 1996 and January of 1997 and rendered another order permitting Yalamanchi to inspect Strasser's computer. Compliance with the trial judge's order was delayed, as Strasser again responded with a petition for certiorari. This court denied the petition and his later motion for rehearing, rehearing en banc, or certification. Not until the Florida Supreme Court summarily denied Strasser's certiorari petition for lack of jurisdiction did he concede defeat and agree to a date for inspection by Yalamanchi's expert.
That day was November 15, 1997. Yalamanchi's relief was short-lived, however, as his expert was informed for the very first time that the computer hard drive at the center of this lengthy and costly litigation had been severely damaged by lightening and thrown out by Strasser's employee, Gary Barton, more than a year earlier in September of 1996. This revelation came on the heels of allegations and testimony from former employees that relevant documents were not disposed of in the ordinary course of business as Strasser had contended, but systematically shredded and destroyed even after Yalamanchi had requested them. The resulting effect was to severely limit Yalamanchi's discovery efforts to obtain an accurate determination of the amounts due him under the employment agreement.
Armed with these allegations regarding evidence destruction and discovery abuses, a hearing was held before the trial court on August 18, 1998, the day preceding trial. Styled as a motion in limine, Yalamanchi asked the trial judge for an order permitting him to introduce evidence at trial regarding Strasser's pre-trial discovery misconduct and fashion an appropriate remedy. A predecessor judge had previously heard and reserved ruling on the issue of sanctions arising from similar allegations of abuse. The successor judge took additional testimony, including that of Barton, in an effort to better understand the circumstances that led to the destruction of the computer hard drive. Barton confirmed that without the hard drive, it would be impossible for Yalamanchi to retrieve the purged information. Neither he nor defense counsel, however, was able to explain why the destruction of this critical piece of evidence had never been disclosed previously to either the court or the plaintiff's attorney during prior hearings or while the matter was on appeal.
The trial judge ultimately ruled that Yalamanchi should be permitted to introduce at trial evidence of Strasser's alleged discovery misconduct. Before making his decision, the judge raised several questions and made certain comments that prompted Strasser to file a motion for recusal. Strasser alleged that the judge's statements reasonably led both he and his wife to believe that they could not receive a fair trial. It is the denial by the trial judge of Strasser's motion that gives rise to Appellants' first issue on appeal.
In determining whether the trial court correctly denied Strasser's motion for recusal, it is necessary to consider the judge's statements in their entirety and in proper context.
*1091 At or near the close of the hearing and after having heard the testimony of Barton, the trial judge asked:
How could ... the defendant in good conscience permit any data to be eliminated? I'll hear from anyone.... Right now the court is wondering whether to decide to fire up all burners against the defendant on the court's own motion.
Concerned that Yalamanchi had been left uninformed as to the loss of documents and the destruction of the computer's hard drive, he inquired further:
Why wasn't it disclosed to the [plaintiff], we don't have these records, "A," we had an electrical surge, "B," we have thrown the hard drive in the dump?
When Strasser's attorney could come up with no satisfactory explanation, the court commented:
Sounds to me like your client is going to have to suffer the consequences of non-disclosure. If the client were to come before me, if I was presiding over pretrial, I possibly would have assessed Doctor Strasser for a significant six-figure fine for having failed to disclose the damage to and subsequent disposal of-a unilateral decision to dispose of something which was subject to a lot of controversy-a lot of attorney work. I wouldn't have batted an eye at a $100,000 fine in this case.
* * *
It's the responsibility of Doctor Strasser to have informed his attorneys of it accordingly. And I will be asking Doctor Strasser personally why he didn't disclose that information to his attorney. The consequences are great and directly impact on this case.
At this point, Appellants' counsel attempted to shift the blame away from Strasser, indicating that he may not have been aware that "the hard drive had been fried or that Mr. Barton had taken it upon himself to take it out and throw it out." The court then asked:
Am I supposed to put Mr. Barton in jail because he made a unilateral decision to dispose of something? ... Where I'm going, I'm very concerned, if not indeed frustrated, that a plaintiff while litigating a claim of substance is deprived of any opportunity to have experts retained by the plaintiff and in whom plaintiffs possessed confidence to examine the questioned item for the purpose of ascertaining whether there was useful information.
Finally, in response to the argument of Appellants' attorney that there was no evidence of any intentional destruction of evidence, the court responded:
Sure does cause the hackles on the back of my neck to rise in suspicion when I hear the only thing missing is what plaintiff wanted. That bothers me. It bothers me as a judge and it would certainly have bothered me as a trial attorney.
It is based on these comments that Appellants question the trial court's perceived impartiality, correctly citing the legion of Florida case law that mandates recusal when litigants successfully demonstrate a reasonable, well-grounded fear that they will not receive a fair and impartial trial or that the judge has pre-judged the case. See Wargo v. Wargo, 669 So.2d 1123 (Fla. 4th DCA 1996); Nunez v. Backman, 645 So.2d 1063 (Fla. 4th DCA 1994); Borjas v. Brescher, 579 So.2d 399 (Fla. 4th DCA 1991); and Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981). They further liken the facts of this case to several recent decisions in which trial judges made certain gratuitous and unsolicited comments disparaging to a party or that party's legal position that resulted in their disqualification. For the reasons that follow, *1092 we find this case easily distinguishable from those cases cited by Appellants.
In Owens-Corning Fiberglas Corp. v. Parsons, 644 So.2d 340 (Fla. 1st DCA 1994), the trial court, during a pre-trial motion to strike, made several derogatory comments concerning Owens Corning, including an opinion that its credibility was "about as thin as a balloon." Similarly, the trial judge in Roy v. Roy, 687 So.2d 956 (Fla. 5th DCA 1997), labeled the husband "Mr. Dead Beat Man of the Year" without the benefit of having taken any testimony during a contempt proceeding. In the context of another contempt hearing, this court granted prohibition when the trial judge saw fit to give his opinion as to the lack of trustworthiness on the part of the husband and on how he belonged in jail after refusing to allow him to testify. Sperber v. Sperber, 608 So.2d 145 (Fla. 4th DCA 1992).
In each of the cases cited by Appellants above and in their brief, the trial judges' remarks and opinions not only expressed a strong personal dislike for the litigants, but also were largely unrelated to the matter before the court and were given before little or any evidence was taken. The trial judge's comments in this case fail to rise to the level of personal attacks on Strasser, and they were made only after the trial judge familiarized himself with all of the prior pleadings and afforded each side an opportunity to present evidence on issues wholly relevant to the motion in limine. Appellants were put on notice that all of their alleged discovery abuses, including the circumstances surrounding the sudden and unexplained destruction of the computer's hard drive, were before the court for its determination as to whether any such evidence should be considered by the jury.
In Nassetta v. Kaplan, 557 So.2d 919 (Fla. 4th DCA 1990), we had occasion to address the conduct of a trial judge who, as in this case, expressed dissatisfaction with a litigant's conduct. After refusing to reduce a defendant's bond, the judge commented that he did not care whether the defendant got out of jail or not. In denying the defendant's writ of prohibition seeking to reverse denial of his motion for disqualification, we stated:
We increasingly encounter situations where the motive behind a motion to disqualify is obviously to gain a continuance or to get rid of a judge who evidences doubt or displeasure as to the efficacy of the movant's cause of action by oral comment or by entering adverse judicial rulings. A judge's remarks that he is not impressed with a lawyer's, or his client's[,] behavior are not, without more, grounds for recusal.
Id. at 921.
Speculation on the part of the trial judge as to whether he should "fire up all burners against the defendant," coupled with his later statement that if he were presiding over pre-trial, he "possibly would have assessed Dr. Strasser" a six-figure fine, are, in hindsight, not our words of choice. However, when considered in context, they do not reach the threshold level required for recusal. They do, on the other hand, express the understandable frustration and concern that the trial judge must have experienced when confronted with the sudden and unexplained revelation concerning the missing hard drive. As noted, Appellants were at a complete loss to explain how this fact, wholly within their knowledge, was concealed from Yalamanchi for a period of over fourteen months, during which time the parties litigated extensively in both the trial court, this court, and the Florida Supreme Court. Moreover, although a ruling on the issue of sanctions previously had been reserved and was not technically before the court on August 18, the subject matter was. We conclude, *1093 therefore, that when taken in context, the statements of the trial judge at the August 18 hearing do not warrant or require recusal.
We are next called upon to determine whether the trial court abused its discretion by admitting evidence of Appellants' pre-trial discovery conduct. Specifically, the court permitted Yalamanchi to put before the jury four items: (1) Defendant's response to request for production; (2) an affidavit filed by Strasser; (3) Defendant's answer to interrogatories; and (4) a composite exhibit including all of the documents relating to Yalamanchi's request to inspect and test Strasser's computer system. Appellants argue that any evidence of Appellants' pre-trial discovery conduct would only unnecessarily complicate and confuse the issues before the jury. We disagree.
This court is mindful of the general rule that "[e]vidence related to the history of pre-trial discovery conduct should normally not be a matter submitted for the jury's consideration on the issues of liability." Amlan, Inc. v. Detroit Diesel Corp., 651 So.2d 701, 703 (Fla. 4th DCA 1995)(citing Emerson Elec. Co. v.. Garcia, 623 So.2d 523 (Fla. 3d DCA 1993)). An exception exists, however, in cases such as this, "in which the misconduct alleged is the destruction or unexplained disappearance of crucial evidence." Id. at 703. See also Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla.1987)(unexplained disappearance of an operative report in a medical malpractice case), and Bird v. Hardrives of Delray, Inc., 644 So.2d 89 (Fla. 4th DCA 1994)(willful destruction of an MRI film in a personal injury action).
Relevant evidence is evidence tending to prove or disprove a material fact. § 90.402, Fla. Stat. (1997). In this case, the disputed discovery exhibits and Appellants' alleged misconduct were directly relevant to prove Yalamanchi's added claim for negligent destruction of evidence. The documents provide competent evidence relating to the destruction of evidence and the inability or impairment of Yalamanchi to prove his claim of breach of contract, both of which are necessary elements for a cause of action alleging negligent destruction of evidence. Continental Ins. Co. v. Herman, 576 So.2d 313, 315 (Fla. 3d DCA 1990). We find no error on the part of the trial judge in admitting such evidence.
Likewise, there is no merit to Appellants' argument that they are entitled to a new trial because of erroneous instructions by the trial judge to the jury. In so ruling, we find that the trial court correctly allowed Yalamanchi's claim for destruction, or spoliation, of evidence to go to the jury. Although the claim was originally pled as an intentional tort, the jury was instructed, without objection by Appellants, on a theory of negligent destruction of evidence without any reference to "intentional" language in either the instructions or the verdict. The complaint specifically alleged all the requisite elements for the negligent destruction of evidence, and the instruction was amply supported by the evidence.
Nonetheless, Appellants claim that because there was no lawful duty on their part to preserve the evidence, the claim should never have gone to the jury. While we agree that Appellants were under no statutory or contractual duty to maintain such evidence, a party does have an affirmative responsibility to preserve any items or documents that are the subject of a duly served discovery request. See Figgie Int'l, Inc. v. Alderman, 698 So.2d 563, 567 (Fla. 3d DCA 1997)("[T]he duty of a litigant to preserve relevant evidence is established by the opposing party's submission of a discovery request identifying documents of the same subject *1094 matter as those which the receiving party possesses...."). Although Appellants assert that many documents, including the office billings, day sheets, and records documenting bad debts, were destroyed prior to Yalamanchi's requests, the record does not support such a contention. Even Appellants do not dispute the fact that the hard drive was discarded months after Yalamanchi's original request to inspect and test the computer system.
Of greater concern is Appellants' argument that the trial court improperly instructed the jury that the negligent destruction of evidence may be inferred from Appellants' failure to preserve and maintain evidence. A cause of action for negligence consists of three elements that must be pled and proved: "(1) [T]he existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others ...; (2) a failure on the part of the defendant to perform that duty; and (3) an injury or damage to the plaintiff proximately caused by such failure." Bondu v. Gurvich, 473 So.2d 1307, 1312 (Fla. 3d DCA 1984). By instructing the jury to infer the negligent destruction of evidence due to Appellants' failure to preserve and maintain records, the court erroneously shifted the burden of proof to Appellants on the issue of breach of due care.
We must inquire further, however, as to whether the court's erroneous instruction was so prejudicial as to require a new trial. See Sheen v. Jenkins, 629 So.2d 1033 (Fla. 4th DCA 1993), and Matalon v. Greifman, 509 So.2d 985, 986 (Fla. 3d DCA 1987). In this case, we conclude it was not. Simply stated, the evidence presented to the jury was such that the verdict was not likely affected by the erroneous instruction.
We also find no merit to Appellants' remaining allegations regarding the court's instructions to the jury and consider instead the contention by Appellants that the jury verdict form was the product of confusion and misunderstanding. Appellants raise two arguments in support of their position. First, they assert that the jury was improperly asked to decide the negligent destruction of evidence claim before deciding Yalamanchi's breach of contract action. Second, it is argued that it was error not to allow for any separation of damages on the verdict form as between the spoliation and the breach of contract claim.
While the two claims may be tried together, Appellants argue that it is improper to permit Yalamanchi to recover damages for both spoliation and breach of contract. They reason that if Yalamanchi can successfully prove by a preponderance of evidence that Strasser breached his employment agreement, then the jury should ignore the spoliation claim and assess damages against Strasser. If they cannot do so, only then should the jury consider whether the failure to prove the breach of contract claim was a result of Appellants' destruction of evidence and award damages accordingly.
Appellants' argument ignores or misconstrues an essential element of a cause of action for negligent destruction, that being "a significant impairment in the ability to prove the lawsuit." Herman, 576 So.2d at 315. Florida law does not require that it be impossible for a party to prove its case in order to recover damages on a spoliation claim. A party significantly impaired by the destruction of evidence may still be able to prevail in an action for breach of contract on the basis of existing evidence, albeit to a lesser extent and for reduced damages. By entitling Yalamanchi to certain evidentiary presumptions, the spoliation claim permits recovery for those missing damages that but for Appellants' destruction of evidence, Yalamanchi *1095 otherwise would have been able to prove. The total measure of damages remains the same-namely, the amount of money due Yalamanchi under the contract. Accordingly, we find no error in permitting the jury to find for Yalamanchi on both the spoliation and breach of contract claims or in failing to provide for a separation of damages for each on the verdict form.
Appellants' final argument addresses whether the trial court improperly limited impeachment of Candace Paranell, Yalamanchi's "star witness," by excluding evidence that she lied under oath in an unrelated matter. It did not.
Impeachment on collateral issues is clearly impermissible. See Doremus v. Florida Energy Sys. of S. Fla., Inc., 634 So.2d 1106 (Fla. 4th DCA 1994), and Dempsey v. Shell Oil Co., 589 So.2d 373 (Fla. 4th DCA 1991). Evidence is collateral and therefore inadmissible when it neither (1) is relevant to prove an independent fact or issue nor (2) would discredit a witness by establishing bias, corruption, or lack of competency on the part of the witness. Correia v. State, 654 So.2d 952, 954 (Fla. 4th DCA 1995). The proffered evidence in this case clearly addressed a collateral matter-specifically, whether Parnell gave untruthful deposition testimony in another case. Nor did the evidence demonstrate bias, corruption, or lack of competency on the part of Parnell.
Appellants contend that such evidence was admissible for the purpose of attacking Parnell's credibility. Section 90.608, Florida Statutes, permits a party to attack a witness by:
(1) Introducing statements of the witness which are inconsistent with the witness's present testimony.
(2) Showing that the witness is biased.
(3) Attacking the character of the witness in accordance with the provisions of 90.609 or 90.610.
(4) Showing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about which the witness testified.
(5) Proof by other witnesses that material facts are not as testified to by the witness being impeached.
§ 90.608, Fla. Stat. (2000). The evidence in question does not fall within any of these categories. Because the impeachment evidence was improper, the trial court correctly precluded its admission.
Based on the foregoing, the judgment of the trial court is hereby AFFIRMED.
WARNER, C.J and STEVENSON, J., concur.