LEVENSON, JEFFREY, R., Associate Judge.
Frank Special, as the personal representative of his wife’s estate, appeals a final judgment in favor of the defendants below, Dr. Ivo Baux, his related corporations, and West Boca Medical Center, Inc. Special raises three claims. We affirm on all three, but write to discuss Special’s contention that the trial court erred in limiting his cross-examination of one of the defendants’ witnesses.
Susan Special became pregnant at 38. Five weeks before her due date, Susan underwent a cesarean delivery because her fetus presented breech. She was wheeled into the operating room at the Center’s labor and delivery suite. Dr. Baux, the anesthesiologist, applied spinal anesthesia. Another doctor delivered the baby. About a minute after the placenta was removed, Susan became unresponsive and her blood pressure dropped acutely. She had a cardiopulmonary arrest. Dr. Baux intubated her and called a code blue, and he and other hospital personnel attempted to revive Susan. Although they resuscitated her, Susan suffered another arrest in the Intensive Care Unit. She died approximately five hours after delivery.
On behalf of the estate, Special sued the defendants for negligence. Special alleged that Dr. Baux and the Center were negligent in administering anesthesia, in monitoring her system and controlling her fluids during surgery, and in responding to her cardiopulmonary arrests. The defendants denied the allegations. They alleged instead that Susan’s death was caused by amniotic fluid embolus (AFE), an allergic reaction from mother’s blood mixing with amniotic fluid, sometimes causing heart-lung collapse. After a jury heard the matter, it found that Dr. Baux was not negligent. The trial court rendered final judgment in favor of the defendants.
At trial, the AFE diagnosis figured prominently. Most notably, Special called Dr. Barbara Wolf, the chief medical examiner of Palm Beach County at the time of Susan’s death. Dr. Wolf testified that she had conducted the autopsy on Susan and concluded that there was no evidence of AFE. She explained that in a majority of cases where someone dies from AFE, the autopsy provides evidence of AFE. Special also called Dr. Mark Adelman, a treating physician at the hospital, to testify. Special asked him about the disproportionate number of cases of AFE at the Center as compared to the national average. He testified that he recalled personally seeing one or two cases per year at the Center.
Subsequently, the defendants called Dr. Gary Dildy, an obstetrician gynecologist and maternal-fetal medicine expert, to testify. Dr. Dildy also maintained that Susan died of AFE. On cross-examination, Special elicited from Dr. Dildy that the probability of AFE is approximately 1 in 20,000 births, but can range between 1 in 8,000 and 1 in 80,000. The defendants objected when Special began to ask Dr. Dildy to address Dr. Adelman’s testimony that he saw between one and two cases of AFE annually at West Boca. Special responded that he sought this line of questioning to impeach Dr. Adelman’s testimony. The trial court sustained the objection, noting that Special could inquire about numbers and make his argument about disproportionate diagnoses in closing, but Special was not permitted to have Dr. Dildy testify about the credibility of Dr. Adelman because it was impermissible collateral impeachment.
*685 On appeal, Special argues that the trial court abused its discretion because his cross-examination of Dr. Dildy would have undermined Dr. Dildy’s own conclusion that Susan died of AFE. We disagree, and hold that the court did not abuse its discretion in excluding the testimony. See Nationwide Mut. Fire Ins. Co. v. Bruscarino, 982 So.2d 753, 754 (Fla. 4th DCA 2008).
“ ‘Impeachment on collateral issues is clearly impermissible.’ ” Id. (quoting Strasser v. Yalamanchi, 783 So.2d 1087, 1095 (Fla. 4th DCA 2001)). “When evidence ‘neither (1) is relevant to prove an independent fact or issue nor (2) would discredit a witness by establishing bias, corruption, or lack of competency on the part of the witness,’ it constitutes collateral, impermissible evidence.” Id. (quoting Strasser). “The test for determining whether a matter is collateral or irrelevant is whether the proposed testimony can be admitted for any purpose independent of the contradictions.” Foster v. State, 869 So.2d 743, 745 (Fla. 2d DCA 2004) (quoting Lawson v. State, 651 So.2d 713, 715 (Fla. 2d DCA 1995)). See also § 90.608(5), Fla. Stat. (2003) (providing that any party may attack the credibility of a witness by contradictory testimony given by another witness as long as facts testified to are not collateral to the issue).
The trial court properly found that the issue of over-diagnosis of AFE at the Center was a collateral issue. A general claim of over-diagnosis of AFE at the Center does not affect whether, in this case, Dr. Baux negligently attended to Susan during her C-section or negligently attempted to resuscitate her, as alleged in Special’s complaint. In other words, whether AFE was over-diagnosed at the Center had no bearing on the issue of Dr. Baux’s alleged negligence. Because over-diagnosis was an immaterial fact, evidence on it would have been irrelevant. See § 90.401, Fla. Stat. (2003) (“Relevant evidence is evidence tending to prove or disprove a material fact.”). Thus, the testimony was otherwise inadmissible and the trial court did not abuse its discretion in preventing Special from eliciting such testimony from Dr. Dildy to impeach Dr. Adelman.
Assuming arguendo that the evidence in question was not collateral, and the court abused its discretion, such error would have been harmless. Clearly, the issue of over-diagnosis was sufficiently presented in Dr. Adelman’s testimony, through the Center’s interrogatory answers, and — most prominently — in Special’s closing argument. In particular, Special argued with vigor that the Center either had an epidemic of AFE or was over-diagnosing it:
[Dr. Adelman] said, I see one to two a year at West Boca Medical Center. I didn’t put the words in his mouth. He said, I see one to two a year at West Boca Medical Center.
[I]f you take his numbers, and you believe they have this many amniotic fluid emboluses at West Boca Medical Center every year, it is somewhere between 15 and 80 times the national average they’re diagnosing amniotic fluid embolus at West Boca Medical Center, between 15 and 80 times the national average.
So, it was either an epidemic, which there isn’t, at West Boca Medical Center, or they’re overdiagnosing amniotic fluid embolus. They’re calling things that aren’t amniotic fluid embolus, like he did in this case, ... because they’re not bothering to look at autopsies, they’re not bothering to look at other *686 records, they’re not bothering to investigate why....
It’s not the epidemic, it’s that he’s overstating the diagnosis, and that’s wrong, ladies and gentlemen, that is flat out wrong to do, and that’s what they did in this case.
As such, the jury was well aware of the AFE over-diagnosis allegation both through evidence and through argument, rendering any error clearly harmless. See Pascale v. Fed. Express Corp., 656 So.2d 1351, 1353-54 (Fla. 4th DCA 1995) (“Generally, an error is harmless if it does not injuriously affect the substantial rights of the complaining party. The test is whether, but for the error, a different result would have been reached.” (citation omitted)).
Accordingly, we affirm the judgment entered below.
TAYLOR, J., concurs specially with opinion.
FARMER, J., dissents with opinion.