DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PUBLIX SUPER MARKETS, INC.,** and
**RANDOLPH SAPP,**
Petitioners,

v.

**MONICA OLIVARES,** individually, and as Personal Representative of the
**ESTATE OF ALBERTO OLIVARES,**
Respondent.

No. 4D19-2202

[January 8, 2020]

Petition for writ of prohibition to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. CACE18-006314.

Edward G. Guedes and Adam M. Hapner of Weiss Serota Helfman Cole and Bierman, P.L., Coral Gables, for petitioner Publix Supermarkets, Inc.

Cindy J. Mishcon of Lewis Brisbois Bisgaard & Smith LLP, Fort Lauderdale, for petitioner Randolph Sapp.

Raymond Valori, Michael Freedland and Melissa Gunion of Freedland Harwin Valori, P.L., Fort Lauderdale, and Kara Rockenbach Link and Daniel M. Schwarz of Link & Rockenbach, P.A., West Palm Beach, for respondent.

WARNER, J.

Petitioners seek a writ of prohibition to disqualify the trial judge from presiding in this negligence case involving a claim of punitive damages. They claim that the judge is biased against them on an issue central to their defense on the punitive damage claim. After careful review of the transcripts of proceedings, we deny the writ. We conclude that the comments, taken in context, do not create a reasonable fear that the judge is biased or had prejudged the issues involved.

This petition arises in an underlying wrongful death case. The Respondents/plaintiffs (the decedent's spouse and his estate, hereinafter referred to as plaintiffs) allege that the decedent was driving his car through an intersection on a green light, while petitioner/defendant Randolph Sapp was driving a Publix delivery truck on a cross street approaching a red light at the same intersection. Sapp, who was on his cell phone at the time, drove through the red light and collided with the decedent's car, causing his death. Plaintiffs alleged that cell phone use by the driver contributed to distracting the driver, causing the accident.

After two hearings, one on the plaintiffs' motion to amend to claim punitive damages, petitioners Publix and Sapp filed a motion to disqualify the trial judge based upon several comments made during the hearings. They claim that these comments show the court's bias against their position that the hands-free use of a cell phone, or a policy permitting it, does not justify punitive damages, because cell phone use in a vehicle is not prohibited by law. The judge, who had encountered the issue of cell phone use in other cases, engaged defense counsel in questioning based upon the Socratic method, posing hypotheticals to test the defense argument. The judge ruled against petitioners and granted the motion to amend to add a claim of punitive damages.

In this petition, we do not address whether the judge was right or wrong as a matter of law in allowing the claim for punitive damages. We only address whether the judge should be disqualified because of the comments made on the issue throughout the hearing.

To clearly understand the comments made, we recite at length the proceedings at both hearings. The comments with which the Petitioners take issue are **bolded** for understanding by the reader.

The plaintiffs filed their initial complaint against Sapp and Publix in March 2018. Publix moved for summary judgment on some issues, but at a hearing in February 2019, plaintiffs sought to continue or for the court to deny the motion because of outstanding discovery. During that hearing, plaintiffs' attorney noted he was requesting T-Mobile records. The judge queried whether they knew that Sapp was on the phone, and counsel stated they knew Sapp was on the phone at the time of the accident. Counsel then stated:

> MR. VALORI: We know he was on the phone, we're trying to figure out whether he was on the phone during the other 7 or 8 accidents that he had.

2

> THE COURT:  Publix doesn't have a policy about talking and driving?
>
> MR. RUFF: Publix has a policy that says you follow, it's a federal note[] of safety act, and that is, you could be on the phone but it has to be hands free.  There's no evidence, in this case, that the use of the phone, in this accident, was anything other than hands free.
>
> MR. VALORI: That's part of the story, your Honor.
>
> THE COURT:  **Are you going to change that policy, at some point?**
>
> MR. RUFF: That's nothing I could speak to and I would charge if they asked me for an opinion on that.

Defense counsel went on to argue other matters, and the court ultimately denied the motion without prejudice because of the outstanding discovery. The defense did not move to disqualify the judge for this single comment.

In April 2019, after conducting extensive additional discovery, the plaintiffs moved to amend the complaint to plead punitive damages, presenting proffers of evidence from depositions and exhibits.  The plaintiffs argued that Sapp could be held liable for punitive damages because he was grossly negligent—his conduct was "so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct."  § 768.72(2)(b), Fla. Stat. (2018).  The plaintiffs alleged that Sapp was speeding and inattentive. He was talking on his cell phone while driving, "for the expressed purpose of distracting himself from the driving task," which he did "continually and habitually."  As to Publix, the plaintiffs argued that the company could be held liable for punitive damages because it "actively and knowingly participated" in Sapp's conduct, "knowingly condoned, ratified, or consented" to Sapp's conduct, and itself "engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by [the plaintiffs]."  § 768.72(3), Fla. Stat. (2018).  The plaintiffs alleged that Publix negligently trained Sapp and "ratified" his cell phone use and speeding.

At a hearing in June, the parties sought to address both a renewed motion for summary judgment by Publix with respect to claims of negligent

hiring and retention, and the plaintiffs' motion to amend to add a claim for punitive damages. Publix posited that because it conceded Sapp was within the course and scope of his employment at the time of the accident, there could be no cause of action for negligent hiring and retention, as those causes of action were limited to circumstances where an employee was acting outside the scope of employment. The judge questioned counsel on that and posed a hypothetical regarding drinking:

> THE COURT: Let's go back to my initial question. Are you telling me you cannot have conduct that is both within and without the course and scope of employment at the same time?
>
> MR. RUFF: I believe that would be correct, Your Honor. But that's not an issue.
>
> THE COURT: What if he were drinking?
>
> MR. RUFF: If he were drinking and we challenged it, it would be a question of fact for the jury, whether he was inside or outside the course and scope. Here, there is no challenge. They're admitting he was inside the course and scope.

The judge and Publix's attorney continued to debate the validity of the negligent retention claim and course and scope of employment, using the drunken employee hypothetical, until plaintiffs' counsel suggested that he proffer the evidence to support the punitive damage claim to explain the context of the direct liability claims and punitive damage claim against both Sapp and Publix. He then made an extensive proffer.

The plaintiffs maintained that Sapp was grossly negligent. The proffered evidence showed that he was driving downhill on a curved road, approaching a red light in a residential neighborhood with a forty-mile-per-hour speed limit. He was driving fifty-one miles per hour one minute before the accident but slowed to forty-four miles per hour immediately before impact. He was "oblivious to the red light" because he was talking on his cell phone to a friend (and fellow Publix truck driver), which he did "pretty much continuously" throughout the day. He ran the red light, causing the accident. The decedent's car was the second car through the intersection, showing how flagrantly Sapp disobeyed the red light signal.

An expert on commercial trucking explained how commercial drivers required special training and special licensing for driving rigs weighing as

much as 80,000 pounds. The plaintiffs presented evidence that Publix specially trains its truck drivers on managing speed, looking ahead at traffic, scanning at intersections, paying attention to their surroundings, and avoiding distracted driving. A truck driver "is required to exhibit a higher level of skill than a driver of a regular car." Video clips from these training sessions were played in court. The plaintiffs' attorney then laid out how this training and Publix's cell phone policy were inconsistent. While training emphasized speed management, scanning and attentiveness, particularly at intersections, and avoiding distractions, Publix also permitted hands-free cell phone use.

> These things [speed, scanning, attentiveness] are interrelated concepts, and they build on each other. There's a wealth of evidence here, Your Honor, that both show that Publix knew that its policy [allowing cell phone use] was highly dangerous, and that everyone here knew that this man shouldn't have been talking on the phone and certainly shouldn't have been talking on the phone all day long. He shouldn't have been speeding; he shouldn't have been speeding on a curve; he shouldn't have been speeding when he approached the intersection; and he certainly should be scanning, which he wasn't because he didn't see Mr. Olivares until the very last second.

Even Sapp confirmed in his deposition that he had not abided by his training when he was speeding, particularly around a curve and through an intersection. The Publix fleet safety specialist agreed in his deposition testimony that Sapp's actions had not conformed to Publix training.

The plaintiffs produced a copy of the Florida Commercial Driver's License (FCDL) handbook which specifically addressed distraction by the use of cell phones. The handbook warns against such distractions and specifically states, "Note that hands-free devices are no less likely than handheld cell phone devices to cause you to become distracted. Attention is diverted from the driving task while using either device." Publix training also stressed avoidance of distractions, including cell phones, admonishing employees: "[S]tay focused. Don't let common distractions get you into trouble. If you need to look at a map, read paperwork, or handle a phone call, find a safe place to pull over." Specifically, Publix training videos showed the deadly results of being on a cell phone while driving. One involved a similar deadly crash as the one in the instant case, where a driver was on his phone at the time of the accident.

In his deposition, Sapp admitted he knew that cell phone use while driving could be deadly.  Yet he was on the phone at the time of the accident, when he violated all of the other cautionary driving skills.  Phone records showed that he had been on his phone most of the day.   He admitted that he was in the habit of talking on his phone to friends most of the day, and despite this tragic incident, he would continue to use his cell phone while driving.  The plaintiff maintained that not only was he intentionally engaging in distracting behavior while driving, but Publix knew about it and condoned it by also having managers call him while he was driving. Counsel argued:

> Your Honor, he's intentionally distracting himself from the driving task.  That's one of the keys here, Your Honor.  This man is not taking a call from his wife who's having a baby, who's going to the hospital or something like that. He's just doing this to pass the time.  No one at Publix ever disciplined him for talking on the phone, because he's allowed to talk on the phone . . . .
>
> Publix supervisors would call him while he was driving.  So Publix obviously, beyond just their policy, they know he's on the phone because they're talking to him while he's driving.  They admitted to it[.]

Publix's company-wide policy permitted a truck driver to talk on the phone so long as it was hands-free, and the driver only touched one button.  The safety supervisor conceded that if Publix policies deviated from the policies in the FCDL handbook, the drivers could follow the Publix policies.  And he further agreed that talking on the cell phone was multi-tasking which led to reduced attentiveness.  The plaintiffs quoted from the supervisor's deposition:

> "Just so we're clear, Publix's policy allows the driver to essentially talk on the phone as much as they want.  Correct?" "Correct."   "They can have business calls with corporate people from Publix.  Correct?" "Yes." "They can have as many personal calls as they want. Right?" "Correct." "In fact, they can talk on the phone all day long about fishing or whatever they want, with their friends, while they're operating an 18-wheel truck.  Correct?" "Correct."

Another Publix regional fleet safety specialist conceded that cell phone use was not advisable and could result in driver distraction.  He agreed that

the Publix policy on cell phone use was unsafe, according to his deposition testimony.

The supervisors also testified that Publix does not monitor cell phone use by their drivers or investigate whether use of cell phones was involved in any driver accident. In addition to not reviewing cell phone use in driver accidents, Publix also did not monitor such matters as speeding, unless the driver receives a ticket.

In sum, plaintiffs argued that through the foregoing evidence they made a showing which would provide a reasonable basis to recover punitive damages. The standard was conscious indifference to the life, safety and rights of the person exposed to such conduct. Where the standard is met, an employer can be held vicariously liable for such damages if the employer actively participated in it or condoned or ratified the conduct.

After reviewing various cases in which accidents included use of cell phones, plaintiffs' attorney addressed the defendants' argument that because cell phone use has not been declared illegal by either federal or state law, it can't be the basis of punitive damages in this case:

> There is no basis for what they're saying. There is no case law that supports that. I defy them to show you a case that says because our policy doesn't violate the law, that we're not subject to punitive damages based on all the knowledge that we had of what was wrong; and especially where at every other company, the industry standard is to have a policy that's a no cell phone policy.

Defense counsel commenced his response by noting for the court the seriousness of making a claim for punitive damages. A defendant has a substantive right not to be subject to punitive damages without an evidentiary basis. At this point, the court interjected:

> THE COURT: **You don't think there's been sufficient evidentiary proffer thus far?**
>
> MR. RUFF: I do not.
>
> THE COURT: Tell me why.

Defense counsel explained that the core of the plaintiffs' argument for punitive damages was the use of cell phones, and no Florida case had ever

held that punitive damages, based upon cell phone use, were allowed. The plaintiffs had not even cited a trial court case where punitive damages, based upon cell phone use, were allowed. Responding to that the court said:

> THE COURT: You don't have a single case on appeal concerning cell phones. **I have permitted punitive damages for cell phones in multiple cases thus far.**

Defense counsel then noted that both Federal Motor Carrier Safety Administration and Florida statutes allow the use of cell phones while driving. When the Florida Legislature took up the issue, they banned texting but allowed cell phone use. The judge then interjected: "**Because they all talk on the phone while they're driving to Tallahassee.**" Defense counsel stated that he "could not speak to that." He noted as recently as this summer the legislature made texting while driving a primary offense but still did not prohibit hands-free cell phone use. He queried how it could be egregious conduct when the legislature considered prohibiting it and did not.

Defense counsel did not think that Sapp driving four miles over the speed limit could amount to "criminal" conduct for purposes of punitive damages. The court interjected that Sapp also ran a red light. Defense counsel argued that the essence of Plaintiffs' negligence claim against Sapp was based upon the fact that he was distracted. Defense counsel pointed out that Sapp, who had driven for Publix since 2005, had never had even a speeding ticket. Sapp not only attended an initial training session but also attended yearly training sessions. The court then asked: "Just out of curiosity, why do you have training materials that say, No cell phone, and then have a policy that does not support it?" Counsel responded that some of the videos were about texting and did not cover the cell phone as used by Sapp. He also compared the Publix cell phone policy with that of the Federal Motor Carrier Safety Administration regulations which he said were nearly identical. Companies should be able to rely on the federal regulations.

Defense counsel addressed plaintiff counsel's statement that everyone in the industry has banned cell phones by stating:

> MR. RUFF: The comment made by Mr. Valori, that everybody in the industry has banned cell phone use, that's just pure argument. There's nothing in the evidence that suggests that everybody has banned cell phones and Publix is the only one

out there that hasn't done that. . . . Your Honor cannot accept what Mr. Valori says is true. And certainly, if he's going to say that the entire industry has banned cell phones, why hasn't he proved it?

THE COURT: Say that one more time.

MR. RUFF: If you're going to make a comment that Publix is in violation of industry standards, you have to do more than just say that's there.

THE COURT: **Some companies have a no cell phone in the car policy, don't they?**

MR. RUFF: I would be guessing. I would imagine somebody out there, in all the companies of America, somebody has a no cell phone policy.

THE COURT: **I think there's more than just somebody, isn't there? . . .**

MR. RUFF: I don't know. I would be guessing if I commented on that.

The court then asked defense counsel to assume that if the court found sufficient evidence to support punitive damages against Sapp, then why should he not allow them to be pled against Publix also? Defense counsel began by arguing that it depended upon the basis upon which they were sought, i.e., either the various acts of gross negligence by Sapp or the Publix corporate policy. The court then pointed to section 768.72(3)(a), Florida Statutes, "that the employer actively and knowingly participated in the cell phone use." While defense counsel noted that Sapp was not on the phone with his manager at the time of the accident, the court pointed out that the managers frequently communicated with Sapp by phone while he was driving. Defense counsel sought to limit active participation to what occurred at the time of the accident.

Defense counsel argued that it would be wrong to hold Publix to account for punitive damages when Sapp violated its training policies. But the court noted that Sapp was acting in accordance with Publix policy in talking on the cell phone. Defense counsel complained that the entire case against Publix for punitive damages came down to the cell phone policy, even though Publix had trained Sapp appropriately. The court then asked

counsel to address section 768.72(3)(b), which permits punitive damages where an employer knowingly condoned, ratified, or consented to the conduct. Counsel argued that if one starts with the proposition that cell phone use is completely legal both in federal regulation and state regulation, to which the court interjected, "**At least right now, there is no law that specifically prohibits it in the [S]tate of Florida**." Defense counsel continued to argue the point to which the court interjected a hypothetical:

> MR. RUFF: . . . To do one isolated thing, to allow a driver to do something that is expressly legal and that your industry, your regulatory body, tells you, you can do it; and then to show them videos about what could happen -- I mean, cell phone use -- people talk on the cell phone all the time and haven't been in an accident because of cell phones. The reality of the situation is --
>
> THE COURT : **People drive drunk all the time and don't get in accidents**.
>
> MR. RUFF: That's a good point. People have a few drinks and drive, and they're fine. People talk on the cell phone a few minutes, and they're fine. It's when you let it get out of hand. From a Publix standpoint, you're looking at Publix's policy for doing that. There's no evidentiary showing that Publix has this out-of-control fleet because of their cell phone policy.

Counsel continued and addressed some of the cases cited by the plaintiffs. Eventually, the court noted, "It still goes back to 768.72." Counsel argued the case law and the theories of negligence under which the plaintiffs were alleging liability on behalf of Publix. The court then asked another hypothetical:

> THE COURT: Mr. Ruff, let me ask you this: **If I were to find that speaking on the phone -- which some say is found to be four times more dangerous than driving while drunk -- was the basis for the improper conduct, why would that not be sufficient**?
>
> MR. RUFF: Because the pleadings would control in that case, and the Plaintiff is alleging that he's inside the course and scope of employment.

> THE COURT: You're telling me you can't have -- that goes back to my question that I started off the afternoon with, if you can have a situation that is both inside the scope and outside the scope, and the same set of facts.

The court and defense counsel continued to discuss the issue of scope of employment.

The court inquired whether Publix had not ratified the conduct of speaking on the cell phone when Publix managers used it to communicate with the drivers. Counsel responded that Publix was not a direct actor but then admitted upon questioning by the court that section 768.72 did not require direct action. The court found that, at least as to section 768.72(3)(b), direct action was not required. Finally, counsel again reiterated that there was no case that has allowed punitive damages for cell phone use, to which the court responded, "**At least not yet.**" Shortly thereafter counsel concluded his argument.

Turning to the plaintiffs' attorney, the court asked counsel to respond, specifically as to whether the sole ground for punitive damages against Publix was its policy on cell phone use, to which counsel responded that it was not. He contended that they proffered evidence that Publix failed to monitor its drivers for speeding, failed to investigate the use of cell phones in accidents, and exercised "willful blindness" to its drivers' use of cell phones.

After further argument, the court ultimately granted the motion to amend to add punitive damages, relying on both section 768.72(3)(a) and (b).

Within ten days of the hearing, Publix and Sapp both filed motions to disqualify the judge. They alleged that the court was biased against their cell phone policy and the use of cell phones while driving. They cited the bolded comments in the preceding record as their evidence of judicial bias. The court denied the motion as legally insufficient, and this petition for writ of prohibition was then filed.

"Whether the motion [to disqualify a trial judge] is legally sufficient is a question of law, and the standard of review of a trial judge's determination of a motion to disqualify is de novo." *Gregory v. State*, 118 So. 3d 770, 778 (Fla. 2013). To be "legally sufficient" the alleged facts must create a reasonable fear that the party will not receive a fair trial. *Id.* Subjective fear is not sufficient; instead, the fear must be objectively reasonable. *Id.*

11

However, "where a judge's comments are directed to the issue the court is currently handling, a motion to disqualify can be denied." *Lukacs v. Ice*, 227 So. 3d 222, 224 (Fla. 1st DCA 2017); *Eugene J. Strasser, M.D., P.A. v. Bose Yalamanchi, M.D., P.A.*, 783 So. 2d 1087, 1092 (Fla. 4th DCA 2001) (trial judge's comments did not require disqualification when made on the issues, after becoming acquainted with all the pleadings and affording the party the opportunity to address the relevant issues). When a judge has prejudged a case without allowing the opposing party to present argument, denying due process, and issuing gratuitous prejudicial remarks, disqualification may be warranted. *See Wargo v. Wargo*, 669 So. 2d 1123, 1124-25 (Fla. 4th DCA 1996). However, a judge may form mental impressions and opinions throughout the course of the case so long as the judge does not prejudge the case. 669 So. 2d at 1124-25. In addition, "Adverse or unfavorable legal rulings, without more, are not legally sufficient grounds for disqualification." *Pilkington v. Pilkington*, 182 So. 3d 776, 779 (Fla. 5th DCA 2015).

In light of these principles, the comments made by the trial judge do not warrant disqualification. All the comments at the hearing on the motion to amend were directed to the issue of whether the use of cell phones while driving, and a policy to permit such use, could provide a reasonable showing to support a claim for punitive damages. Every allegedly objectionable statement made was relevant to the issue and showed that the judge engaged in a Socratic questioning method to analyze the issue. At no point did the court cut off the defense argument or disparage the argument or defense counsel, although it was apparent that the judge did not agree with it. The court clearly did not deny defense counsel the opportunity to argue his case and the legal issues involved. Mere mental impressions or opinions formed in the progress of argument do not require disqualification.

The trial judge stated that he had allowed punitive damage claims in other cases, which was a direct response to defense counsel's representation that there were not any trial court decisions allowing claims for punitive damages based upon cell phone use. And the trial court's response "at least not yet" to defense counsel's later repetition of this point, was simply indicative of the fact that with multiple cases in which the trial judge allowed punitive damages, at least some of those might end up in an appellate court on the issue. Similarly, the judge's statement that there is no law prohibiting cell phone use in vehicles "at least right now," reflects what defense counsel himself brought up—that is, whether to prohibit the use of cell phones in vehicles continues to be addressed before the legislature.

When counsel objected to the plaintiffs' argument that Publix's policy was contrary to industry standards and was not supported by proof, the trial judge was testing counsel's commitment to this argument by asking whether some companies prohibited cell phone use. These types of questions are common in testing the positions of parties.

The judge's question, in which he noted that "some say" that cell phone use is significantly more dangerous than drunk driving, was part of a hypothetical directed to defense counsel's argument. The judge asked counsel to explain why it would not be enough to permit a claim of punitive damages to proceed under those circumstances. Defense counsel responded, directing the court to the pleadings and the scope of employment issue, he did not suggest that the judge was addressing a "fact" not in the record. Even if the court was remembering evidence presented in another case, questioning on such hypotheticals is well within the type of questioning commonly found in legal discourse. Certainly, it is common in appellate questioning.

We conclude that none of the judge's comments either individually or collectively show bias or prejudice on behalf of the judge which would prevent Publix or Sapp from receiving a fair trial. The trial court did not disparage counsel or the parties. The parties both had ample time to argue their positions. And the court did not rule prior to the completion of their presentations.

The petitioners' complaints in seeking disqualification target the court's rejection of their position that cell phone use cannot form the basis of a punitive damage claim when it has not been declared to be illegal. This is a legal argument which can be appealed by defendants should punitive damages be imposed by a jury. It is not grounds for disqualification of a judge. This judge had encountered this issue in other cases and had allowed punitive damage claims to proceed. Simply because a judge has ruled on an identical legal issue in a prior case does not compel the judge to step aside in subsequent cases involving the same issue. "The fact that a judge has previously made adverse rulings is not an adequate ground for recusal." *Jackson v. State*, 599 So. 2d 103,107 (Fla. 1992). Judges frequently encounter identical legal issues in different cases. We know of no authority which would disqualify a judge from hearing a subsequent case because the judge had ruled adversely to the party's legal position in a prior case.

Concluding that none of the judge's allegedly objectionable comments at the June hearing require disqualification, we deny the writ. As to the single comment at the first hearing, the petitioners did not move to disqualify at that time, and therefore the motion is untimely as to that comment. Even if it were timely, it appears to us to be a gratuitous remark asking if Publix would be changing its cell phone policy, which defense counsel responded to with some humor, suggesting that he would have to charge to give advice. We do not deem the comment, standing alone or in combination with the comments from the June hearing, to raise a sufficient, objective ground for disqualification.

*The petition is denied.*

MAY, J., concurs.
CIKLIN, J., dissents with opinion.

CIKLIN, J., dissenting.

I respectfully dissent because I believe this case presents a textbook example of when disqualification is required following allegations of well-founded, objectively reasonable fears of not being able to receive a fair trial based on the trial court's repeated off-hand comments and questions regarding a fundamentally critical issue in the case.

My firm opinion in this particular situation has nothing to do with any rulings, adverse or otherwise, by the trial court or the identity of the trial judge or the respondent's highly enthusiastic defense of the trial court in its responsive briefing. This is about a cold, analytical review of the record below and our determination as to whether the trial court's impartiality "might reasonably be questioned."

Contrary to the dictates of Florida Rule of Judicial Administration 2.330(f), concerning a trial court's strictly limited consideration on a motion to disqualify, the majority ventures far beyond the legal sufficiency threshold and by leaps and bounds goes through great pains to parse the context and meaning of the trial court's highly problematic words. The majority urges that we should ignore the plain meaning of the spoken words of the trial judge that are spread throughout this record and dig deeply outside of the four corners of the disqualification motion. In an apparent effort to salvage the trial court's continued participation in this matter, the majority suggests that the trial court was doing nothing more than "engag[ing] defense counsel in questioning based upon the Socratic method, posing hypotheticals to test the defense argument."

14

As a trial judge, I often took advantage of opportunities to engage in spirited discussions with the advocates before me. I thought it helped me do a better job as a jurist. Plus, I believe, lawyers and litigants alike enjoyed the robust intellectual conversations, particularly if it gave them an opportunity to focus in on the individualized concerns and all-important mental impressions and observations of the court. As our sister court held in *Pilkington*, 182 So. 3d at 779, a judge may make comments from the bench reflecting his or her observations or mental impressions. But trial judges who say too much and thus risk appearing to have prejudged the case or to be biased, do so at their own peril. All good intentions of the trial court aside, the question of disqualification focuses on the judge's comments *through the lens of the litigant*—not on how a judge grades him or herself as to the ability to act fairly and impartially. *See Livingston v. State*, 441 So. 2d 1083, 1086 (Fla. 1983).

Whether the trial court was using Socratic methodology or not, the black and white record reveals that the trial court objectively stepped over the line and in so doing, delivered to Publix a legally recognized fear that it would not receive a fair and impartial administration of this case. A motion to disqualify is legally sufficient, and must be granted if the facts alleged "would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial." *Gregory*, 118 So. 3d at 778 (quoting *Rodriguez v. State*, 919 So. 2d 1252, 1274 (Fla. 2005)).

Publix filed a detailed, focused and verified motion to disqualify. When objectively reviewed, the sworn contents of the motion were *more* than legally sufficient to align with the Code of Judicial Conduct and Florida Rules of Judicial Administration thereby requiring disqualification.

Simply stated, the trial judge made numerous comments that would legally and objectively lead a reasonably prudent person to believe that the trial court has a personal bias, including multiple statements indicating that (1) it independently investigated facts and expressly considered evidence outside of the record, (2) it had pre-judged the case and (3) it *personally* believed that talking on a cell phone while driving is extremely reckless and that Publix should do something about it to prohibit it in the future.

Within the four corners of its sworn motion to disqualify, Publix alleged:

- At the February 2019 summary judgment hearing, the trial judge asked, "Publix doesn't have a policy about talking and

driving?" When counsel responded that Publix permits hands-free cell phone use while driving, the trial judge pressed: "Are you going to change that policy, at some point?"

- At the June 2019 hearing on the plaintiffs' motion to amend, the trial judge showed a predisposition to permit the plaintiffs to plead punitive damages when he interrupted defense counsel's argument almost immediately by asking, "You don't think there's been sufficient evidentiary proffer thus far?"

- At the June 2019 hearing, the trial judge repeatedly analogized cell phone use with drunk driving and stated, without evidentiary support from the plaintiffs, that "some say" cell phone use has been "found to be four times more dangerous than driving while drunk."

- At the June 2019 hearing, the trial judge stated, without evidentiary support, that multiple companies have banned cell phone use while driving.

- At the June 2019 hearing, the trial judge considered as a basis for his ruling that he had allowed punitive damages for cell phone use in "multiple" other cases, without naming those cases so that Publix could adequately, fairly and intelligently respond.

- At the June 2019 hearing, the trial judge stated, without evidentiary support, that the Florida Legislature has not banned cell phone use while driving only because legislators like to talk on their phones while they drive to Tallahassee.

- At the June 2019 hearing, the trial judge expressed a belief that the law on cell phone use while driving will soon change.

- At the June 2019 hearing, the trial judge expressed a belief that there will soon be case law on allowing punitive damages for cell phone use while driving.

Viewed from the petitioners' perspective, *see Moskowitz v. Moskowitz*, 998 So. 2d 660, 662 (Fla. 4th DCA 2009), any one of these individual statements—many of which were unfounded—would by itself create in a reasonably prudent person a well-founded fear that the judge had

prejudged the issue and was biased against their position.  *See Gregory*, 118 So. 3d at 778; *Wargo,* 669 So. 2d at 1124-25.

Even when ascribing the very best intentions on the part of the trial judge, based on this record and the trial court's comments as a whole, the Canon requires that Publix's motion for disqualification be granted.  I find it unfathomable to hold any other way because the record on review should lead us to the inescapable conclusion that this trial judge should not continue to preside over this case.

I would grant the petition and direct the clerk to randomly assign this matter to one of the other 89 judges in Florida's 17th Judicial Circuit.

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**